**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RAPHAEL CLAVELL** | **Civil Action No.** |
| Plaintiff, | **2:10-cv-03593-SD** |
| **vs.** | |
| **MIDLAND FUNDING, LLC** | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, MIDLAND FUNDING, LLC'S, RESPONSE TO PLAINTIFF, RAPHAEL CLAVELL'S, AMENDED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

(Amended for Grammatical Corrections)

By:   Andrew M. Schwartz, Esquire
      Marshall, Dennehey, Warner,
      Coleman & Goggin
      1845 Walnut Street
      Philadelphia, PA 19103

# Table of Contents

Table of Authorities--- ------------------------------------------------------------ ii

I.   Summary of Arguments by Midland------------------------------------------ 1

II.  Procedural History----------------------------------------------------------- 3

III.   Plaintiff's Statement of Facts Fails to Show Class Certification is
Appropriate --------------------------------------------------------------------- 7

   A.   Midland's Practices and Policies Comply with the Requirements of the
   FDCPA ----------------------------------------------------------------------- 7

   B.   Midland Appropriately Referred Plaintiff's Debt to its Collection Law
   Firm ------------------------------------------------------------------------- 8

   C.   Plaintiff Fails to Offer Any Evidence that Midland's Policies and
   Procedures are Inadequate ------------------------------------------------- 10

   D.   Plaintiff's Proposed Class is not Sufficiently Identifiable and Fails to
   Meet the Requirements of Fed. R.Civ.P. 23.--------------------------------- 18

IV.   Plaintiff's class certification should be denied as plaintiff fails to meet the
requirements of Fed. R.Civ.P 23(A) AND (B)(3) -------------------------------- 19

   A.   Plaintiff Fails to Meet the Requirements of Rule 23(a)-------------------- 23

      1.   Plaintiff Fails to Present Evidence of Numerosity ----------------------- 23

      2.   The Proposed Class Lacks Commonality --------------------------------- 27

      3.   Plaintiff 's Class Lacks Typicality and Adequacy ------------------------ 32

   B.   Plaintiff Fails to Satisfy the Requirements of Rule 23(b) ----------------- 36

      1.   Individual Issues Predominate Over the Proposed Common Issues of
      Law and Fact ---------------------------------------------------------------- 36

      2.   Class Treatment is Not the Superior Method to Litigate Plaintiff's
      Claims. ----------------------------------------------------------------------- 39

V.   Conclusion-------------------------------------------------------------------- 42

# TABLE OF AUTHORITIES

CASES

Abby v. City of Detroit, 218 F.R.D. 544, 549 (E.D. Mich. 2003) ------------------------------------------ 39
Adams v. Kan. City Life Ins. Co., 192 F.R.D. 274, 277-78 (W.D. Mo. 2000 ----------------------------- 30
Agostino v. Quest Diagnostics, Inc., CIV.NO.04-4362, 2010 U.S. Dist. LEXIS 135310, *9-10 (D.N.J. Dec. 22, 2010)--- 30
Aiken v. Obledo, 442 F. Supp. 628, 658 (E.D. Cal. 1977)( ----------------------------------------------- 21
American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 547, 94 S. Ct. 756 (1974)------------------------- 21
Andrews v. Am. Tel. & Tel. Co., 95 F.3d 1014, 1025 (11th Cir. 1996)-------------------------------- 29
Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 55 (3d Cir. 1995)( -------------------------- 21, 32, 35
Barabin v. Gen Motors Corp., No. CIV.A.84-0888, 1993 WL 765821, at *3 (D.D.C. Sept. 22, 1993) --------------------- 31
Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006) --------------------------------------- 19, 32, 33
Beebe v. Pac. Realty Trust, 99 F.R.D. 60, 73 (D.Or. 1983)------------------------------------------- 39
Begley v. Acad. Life Ins. Co., 200 F.R.D. 489, 497 (N.D. Ga. 2001)-------------------------------- 30
Carpenter v. BMW of N. Am., Inc., No. CIV.A.99-CV-214, 1999 WL 415390, at *4, *8 (E.D. Pa. June 21, 1999) ------ 30
Charbonneau v. Mary Jane Elliott, P.C., 611 F. Supp. 2d 736, 743 ( E.D. Mich. 2009) ----------------------------- 35
Chilton Water Auth. V. Shell Oil Co., No. CIV.A.98-T-1452-N, 1999 WL 1628000, at *8 (M.D. Ala. May 21, 1999) --- 30
Chin v. Chrysler Corp., 182 F.R.D. 448, 465 (D. N.J. 1998)---------------------------------------- 30
Clay v. Am. Tobacco Co., 188 F.R.D. 483, 497-98, 503 (S.D. Ill. 1999) ------------------------------ 30
Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 23 n.10-12 (D. Conn. 1997) ------------------------ 30
Danvers Motor Co. v. Ford Motor Co., 543 F.3d 141, 147 (3d Cir. 2008)------------------------ 20, 36, 39
Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968)------------------------------------------------- 24
Dhamer v. Bristol-Myers Squibb Co., 183 F.R.D. 520, 532-34 (N.D. Ill. 1998) ---------------------- 30
Dubose v. First Sec. Sav. Bank, 183 F.R.D. 583, 387(M.D. Ala. 1997)------------------------------ 30
Duncan v. N.W. Airlines, Inc., 203 F.R.D. 601, 605, 610-14 (W.D. Wash. 2001) ---------------------- 30
Edge v. C. Tech Collections, Inc., 2001 U.S. Dist. LEXIS 13490, *14-15 (E.D.N.Y. 2001)------------ 24
Elsen v. Carlisle and Jacquelin, 417 U.S. 156, 164 (1974)----------------------------------------- 41
Eversole v. EMC Mortgage, Corp., No. 05-124-KSF, 2007 WL 1558512, *4-5 (E.D. Ky., May 29, 2007) ----------------- 21
Fahey v. Encore Financial, 2005 WL 2739323 at *2 (N.D. Ohio, Oct. 25, 2008) ------------------------ 24
Feinstein v. Firestone Tire & Rubber Co., 535 F.Supp. 595, 608 (S.D.N.Y. 1982) -------------------- 31
Fisher v. Bristol-Myers Squibb Co., 181 F.R.D. 365, 368 (N.D. Ill. 1998) ---------------------------- 30
Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa. 1995) -------------------------------- 21
Gary Plastic Packaging v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) ---------------- 33
Hallaba v. Worldcom Network Servs. Inc., 196 F.R.D. 630, 645 (N.D. Okla. 2000)------------------ 30
Hammett v. Am. Bankers Ins. Co., 203 F.R.D. 690, 700-02 (S.D. Fla. 2001) ------------------------ 30
Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) ------------------------------------ 33
Hansberry v. Lee, 311 U.S. 32 (1940)------------------------------------------------------------------ 20
Harding v. Tambrands Inc., 165 F.R.D. 623, 631-33 (D. Kan. 1996) -------------------------------- 31
Huntley v. Law Office of Richard Clark, PLLC, 262 F.R.D. 203, 205 (E.D.N.Y. Oct. 23, 2009)----------------------------- 24, 25
Hyderi v. Wash. Mut. Bank, FA, 235 F.R.D. 390 (N.D. Ill. 2006) ----------------------------------- 39
In re Am. Med. Sys. Inc., 75 F.3d 1069, 1089 (6th Cir. 1996) --------------------------------------- 30
In re Citigroup, Inc., No. CIV.A.10011912REK, 2001 WL 1682865, at *3 (D. Mass. Dec. 19, 2001)--------------------- 30
In re Community Bank of N.Va., 622 F.3d 275, 291 (3d Cir. 2010) ---------------------------------- 20
In re Ford Motor Co. Bronco II Prod. Liab. Litig., 177 F.R.D. 360, 376 (E.D. La. 1997)------------------------------ 30
In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 174 F.R.D. 332, 347-52 (D.N.J. 1997); ---------------------- 30
In re Ford Motor Co. Vehicle Paint Litig., 182 F.R.D. 214, 222-26 (E.D. La. 1998) ---------------------------------- 30
In re Jackson Nat'l Life Ins. Co. Premium Litig., 183 F.R.D. 217, 225 (W.D. Mich. 1998) --------------------------- 30
In re LifeUSA Holding, Inc., 242 F.3d136, 147 (3d Cir. 2001------------------------------------------ 29
In re Masonite Corp. Hardboard Siding Prods. Liab. Litig., 170 F.R.D. 417, 422-27 (E.D. La. 1997) --------------------- 31
In re Rhone-Poulenc Rorer, Inc., 51 F.3d1293, 1302 (7th Cir. 1995)--------------------------------- 30
In re Stucco Litig., 175 F.R.D. 210, 219 (E.D.N.C. 1997) ------------------------------------------- 30

In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 527 (3d Cir. 2004) ------------------------------------------------ 19

J.H. Cohn & Co. v. Am. Appraisal Assocs., 628 F.2d 994, 999 (7th Cir. 1980)-------------------------------------------- 33

Jones v. Allercare, Inc., 203 F.R.D. 290, 308 (N.D. Ohio2001) ------------------------------------------------------------ 30

Karnuth v. Rodale, Inc., 2003 U.S. Dist. LEXIS 12095 (E.D. Pa. July 2, 2003) ------------------------------------------ 23

Kenro Inc. v. Fax Daily, Inc., 962 F. Supp. 1162, 1170 (S.D. Ind. 1997) --------------------------------------------------- 22

Kondratick v. Beneficial Consumer Discount, 2006 WL 305399 at *7-10 (E.D. Pa., Feb. 8, 2006) ------------------------ 25

Lyon v. Caterpillar, Inc., 194 F.R.D. 206, 220-23 (E.D. Pa. 2000) -------------------------------------------------------- 30

Mack v. Gen. Motors Acceptance Corp., 169 F.R.D. 671, 679 (M.D. Ala. 1996) ----------------------------------------- 31

Mansfield v. Midland Funding, LLC, 2011 U.S. Dist. LEXIS 34102 (S.D. Cal. Mar. 30, 2011) -------------------- 2, 19, 34, 40

Marascalco v. Int'l Computerized Orthokeratology Soc'y inc., 181 F.R.D. 331, 340-41 (N.D. Miss. 1998)-------------- 30

Moya v. Hocking, 10 F.Supp.2d 847 (W.D. Mich. 1998) ------------------------------------------------------------------ 35

Mueller v. CBS, Inc., 200 F.R.D. 227, 233 (W.D. Pa. 2001) -------------------------------------------------------------- 22

Neely v. Ethicon, Inc., No. 1:00-CV-00569, 2001 WL 1090204, at *8-11, *15 (E.D. Tex. Aug. 15, 2001 ----------------- 30

Oshana v. The Coca-Cola Company, 225 F.R.D. 575, 580 (N.D. Ill. 2005). --------------------------------------------- 21

Oxford v. Williams Cos., Inc., 137 F.Supp.2d 756, 764 (E.D. Tex. 2001)-------------------------------------------------- 30

Peoples v. Am. Fid. Life Ins. Co., 176 F.R.D. 637, 646 (N.D. Fla. 1998) ------------------------------------------------- 30

Poe v. Sears, Roebuck & Co., 1 F.Supp.2d 1472, 1476 (N.D. Ga. 1998) ------------------------------------------------ 30

Powers v. Gov't Employees Ins. Co., 192 F.R.D. 313, 319-20 (S.D. Fla. 1998) ----------------------------------------- 30

Raye v. Medtronic Corp., 696 F.Supp. 1273, 1275 (D. Minn. 1988)------------------------------------------------------ 31

Reese v. Arrow Financial Servcs. LLC, 202 F.R.D. 83, 2001 U.S. Dist. LEXIS 14359, *21 (D.Conn. 2001) ---------------- 24

Rohlfing v. Manor Care, Inc., 172 F.R.D. 330, 341-42 (N.D. Ill. 1997)--------------------------------------------------- 30

Rothwell v. Chubb Life Ins. Co. of Am., 191 F.R.D. 25, 33 n.7 (D.N.H.1998) ------------------------------------------ 30

Sanneman v. DaimlerChrysler Corp., 191 F.R.D. 441, 445 (E.D. Pa. 2000) --------------------------------------------- 22

Schnall v. AT&T Wireless Services, Inc., No. 80572-5, 2010 WL 185943, *4-5 (Wash. Jan. 21, 2010) ----------------- 29

Schwartz v. Upper Deck Co., 183 F.R.D. 672, 681 (S.D.Cal. 1999) ------------------------------------------------------ 23

Shelley v. AmSouthBank, No. CIV.A.97-1170-RV-C, 2000 WL 112778, at *8-10 (S.D. Ala. July 24, 2000)(not reported
    in F.Supp.2d) aff;d, 247 F.3d 250 (11th Cir. 2001) ----------------------------------------------------------------- 30

Smith v. Brown & Williamson Tobacco Corp., 174 F.R.D. 90, 100 (W.D. Mo. 1997)------------------------------------ 30

Spence v. Glock, Ges.m.b.H., 227 F.3d 308, 316 (5th Cir. 2000 ---------------------------------------------------------- 29

Stipelcovich v. DirecTV, Inc., 129 F.Supp.2d 989, 995 (E.D. Tex. 2001)------------------------------------------------- 30

Stirman v. Exxon Corp., 280 F.3d 554, 564-66 (5th Cir. 2002)----------------------------------------------------------- 29

Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 678 (7th Cir. 2001) ---------------------------------------------------- 29

Teng v. Metropolitan Retail Recovery, Inc., 885 F. Supp. 61, 65 (E.D.N.Y. 1994)-------------------------------------------7

Tylka v. Gerber Prods. Co., 178 F.R.D. 493, 496-99, 502 (N.D. Ill. 1998); ----------------------------------------------- 30

Velasquez v. Crown Life Ins. Co., MDL1096 No. CIV.A.M-97-064, 1999 WL 33305652, at * 4-7 (S.D. Tex. Aug. 10,
    1999)--------------------------------------------------------------------------------------------------------------- 30

Walsh v. Ford Motor Co., 257 U.S.App. D.C. 85, 807 F.2d 1000, 1010-11 (1986) ------------------------------------- 30

Weikel v. Tower Semiconductor Ltd., 183 F.R.D. 377, 402-03 (D. N.J. 1998)-------------------------------------------- 30

Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1187, amended by 273 F.3d 1266 (9th Cir. 2001) ----------- 37, 39

STATUTES

15 U.S.C. § 1692, et seq. ------------------------------------------------------------------------------------------------- 4, 6

OTHER AUTHORITIES

5 Moore's Federal Practice § 23.46[3][a] at 23-27 ----------------------------------------------------------------------- 39

RULES

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997);----------------------------------------------------------- 32

Castano v. Am. Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996) ---------------------------------------------------------- 38

Fed.  R. Civ. P. 23(a)(1) --------------------------------------------------------------------------------------------------- 27

Fed. R. Civ. P. Rule 23(a)(2) --------------------------------------------------------------------------------------------- 27

Fed. R.Civ.P. 23(b)(3)(C) ------------------------------------------------------------------------------------------- 41

Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1187, amended by 273 F.3d 1266 (9th Cir. 2001) ----------- 37, 39

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RAPHAEL CLAVELL** | **Civil Action No.** |
| Plaintiff, | **2:10-cv-03593-SD** |
| **vs.** | |
| **MIDLAND FUNDING, LLC** | |
| Defendants. | |

**RESPONSE OF DEFENDANT, MIDLAND FUNDING, LLC, TO PLAINTIFF, RAPHAEL CLAVELL'S AMENDED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

NOW COMES, Defendant, Midland Funding, LLC, by and through its attorneys, Marshall, Dennehey, Warner, Coleman & Goggin, P.C., and hereby submits its response to Plaintiff, Raphael Clavell's Amended Motion for Class Certification and Appointment of Class Counsel, as follows:

## I.       SUMMARY OF ARGUMENTS BY MIDLAND

Plaintiff does not present a viable argument that the most recent proposed class definition meets the requirement that the definition is sufficiently identifiable for the purposes of certification.

The most recently promulgated class definition fails to cure the fatal flaws evident in the original definition because there remain issues of both fact and state law which are indisputably unique as to each proposed class member.  Plaintiff is unable satisfy Rule 23(a)'s requirements of typicality and adequacy of representation.  Even if Plaintiff could circumvent the Rule 23(a) requirements for the purpose of certification, Plaintiff should not be permitted to pursue a private right of action for injunctive or declaratory relief, even in

the class context, because the FDCPA does not afford a private litigant any equitable remedy.   Further, Plaintiff is unable to present a viable argument that he can meet the more rigorous predominance and superiority requirements of Rule 23(b)(3).

In order to pursue a class claim under Rule 23(b)(3), Plaintiff would need to establish that the manifest individual issues as to each putative class member's applicable state statute of limitations for each debt arising from a written agreement could be remedied using collective proofs on a class-wide basis.   Such an attempt to gloss over the individual claims and, more importantly for Midland, individual defenses, renders certification implausible. Certification of the proposed class would deny Midland its due process rights to raise individual defenses to each debtor's potential FDCPA claims.   The result of certification, even if the defined class could be identified, would be mini-trials as to each putative member's unique claims and defenses.   Therefore, this Honorable Court should enter an order denying class certification.

Significantly, the very issues in play in the present motion for class certification were rejected on March 30, 2011 in the matter Mansfield v. Midland Funding, LLC, 2011 U.S. Dist. LEXIS 34102 (S.D. Cal. Mar. 30, 2011)(See a true and correct copy of this Opinion attached hereto as Exhibit "A"). In that matter, Mansfield pursued class certification against Midland on a national basis arising from Midland's "routine practice of filing and assisting in the litigation of lawsuits to collect time-barred consumer credit card debts".

Mansfield, 2011 U.S. Dist. LEXIS 34102 at *3. Mansfield alleged that Midland engaged in a standard practice of filing suits without reasonably determining that the applicable statute of limitations had run.  Id.   While Mansfield's lack of standing was one issue that precluded certification, the Mansfield Court also rejected the putative nation-wide class because of the myriad of individual issues that would undermine class treatment: "there are a variety of credit card member agreements with differing terms including the application of different state laws concerning statutes of limitations, differing arbitration agreements, agreements containing class action waivers, differing defenses to state collection actions which would render the required typicality of the class destroyed". Id. at *16.

As explained in greater detail below, the proposed class that is the subject of certification by Plaintiff is unascertainable, and it lacks requisite typicality and commonality.  It is particularly apparent that class treatment is grossly inferior to individual treatment because of the manifold questions of fact and law render class treatment inferior to individual treatment.  Therefore, Plaintiff's motion for class certification must be dismissed.

## II.    PROCEDURAL HISTORY

On July 22, 2010, Plaintiff, Raphael Clavell, filed a class action complaint against Defendant, Midland Funding, LLC ("Midland") in the United States District Court for the Eastern District of Pennsylvania, docket number 2:10-cv-03595-SD. (See Plaintiff's Class Action Complaint which is attached hereto as Exhibit "B").  In his Complaint, Plaintiff alleges, inter alia, that

Midland violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") through its attempts to collect upon Plaintiff's valid and delinquent debt obligation.  (Exhibit "B").   Specifically, Plaintiff alleges that Midland violated the FDCPA when its collection law firm, the now defunct Mann Bracken, filed a collection action against Plaintiff allegedly outside the applicable Pennsylvania statute of limitations.  (Exhibit "B", ¶¶6, 13).

Plaintiff brought this action on behalf of himself and others whose rights, Midland allegedly violated when its retained law firms filed time-barred collection actions.  Plaintiff seeks a putative national class action, pursuant to Rule 23(b)(3), premised on claims under the FDCPA.

Plaintiff's original complaint defines the proposed class including the following individuals:

> All persons in the United States of America as to whom, during the one year prior to the filing of this Complaint, Defendants sued on time barred debt which was not acknowledged by the consumer prior to or after suit.

(See Exhibit "B", ¶ 17).

Midland filed an Answer to Plaintiff's Complaint on August 23, 2010 denying all liability, damages, and the sufficiency of Plaintiff's class allegations. (See Midland's Answer to the Complaint which is attached hereto as Exhibit "C").

Thereafter, the parties engaged in extensive written and oral discovery. In response to Plaintiff's 30(b)(6) deposition notice, Midland produced four (4) Corporate Representatives for depositions—David Little, Director of Software

Engineering; Patrick Minford, Senior Manager of Business Process; Rita Melconian, Corporate Legal Representative; and Xenia Murphy, Director of Legal Outsourcing.  These individuals were deposed prior to Plaintiff filing his Amended Motion for Class Certification.

In compliance with the Court's Third Scheduling Order, Plaintiff filed his Amended Motion for Class Certification on April 1, 2011.  (See Third Scheduling Order attached hereto as Exhibit "D"; and see Plaintiff's Amended Motion for Class Certification attached hereto as Exhibit "E").  In his Amended Motion for Class Certification, Plaintiff revised his class definition.  Now, he seeks certification of a class which consists of:

> All persons against whom Defendant sued since July 21, 2009, on time barred debt <u>based on written instruments, such as credit card agreements, as calculated from the last payment due date available in Defendant's records.</u>

(Exhibit "E", pg. 1)(emphasis added).

This definition seeks to limit the class to persons whose debts arose through written agreements where the default date is premised on the date of last payment.[1]  Plaintiff's request for class certification and proposed class definition should be denied, inasmuch as the proposed class is not identifiable or ascertainable and simply fails to meet the requirements of Rule 23.

---

[1] This definition would include automobile deficiencies, credit card agreements, loan agreement, leases, promissory notes and other written documents for which each type of debt may be subject to distinct statutes of limitations at the state level (or in the express language as to each agreement regarding the governing law of the said agreement).

This response will first address the applicability of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").   Then, this response will address the issues of both fact and law unique to each proposed class member, demonstrating that Plaintiff cannot satisfy either the Rule 23(a)'s requirements or Rule 23(b)'s more rigorous predominance and superiority requirements.   In fact, by definition, the proposed class demonstrates atypicality and a overwhelming absence of commonality, and the very arguments presented by Plaintiff in pursuit of certification show that the class is unascertainable and that class treatment is grossly inferior to individual treatment because defining such a class presents a staggering and undue burden on the parties.   It is clear that certification should be denied.

Midland will respond to Plaintiff's faulty reliance on the Maryland State Collection Agency Licensing Board's ("Maryland Agency") Summary Order to Cease and Desist and Summary Suspension of Collection Agency Licenses (hereinafter the "Summary Order") as the sole basis for numerosity.

Midland's response will show that it has and had reasonable procedures and policies in place to safeguard against collection actions being filed after the expiration of the applicable statute of limitations and that Midland did not engage in any pattern and practice that violated the FDCPA.

Ultimately, Midland will address Plaintiff's arguments pursuant to Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure and demonstrate why Plaintiff should not be able to advance the current matter as a class action.

6

III.     **PLAINTIFF'S STATEMENT OF FACTS FAILS TO SHOW CLASS CERTIFICATION IS APPROPRIATE**

      A.     **Midland's Practices and Policies Comply with the Requirements of the FDCPA**

Plaintiff's Amended Motion for Class Certification claims that Congress created the FDCPA for the sole purpose of prohibiting certain collection activities by debt collectors, eliminating abusive debt collection practices and to protect consumers from unlawful collection activities.  (Exhibit "E" pgs. 2-3). While the FDCPA was enacted by Congress "to protect consumers from unscrupulous debt collection practices", it was also designed with the intent to avoid "imposing unnecessary restrictions on ethical debt collectors." See Teng v. Metropolitan Retail Recovery, Inc., 885 F. Supp. 61, 65 (E.D.N.Y. 1994).  As such, it is Midland's position that, while the FDCPA was enacted to protect consumers from unlawful activities of debt collectors, the FDCPA should not restrict ethical and compliant companies from carrying out their business activities in connection with the collection of valid and delinquent debt obligations.

Here, Midland implemented comprehensive policies and procedures tailored to avoid collection actions being filed after the expiration of the applicable statute of limitations. (See Deposition Testimony of Xenia Murphy pertinent parts attached hereto as Exhibit "F", pgs. 25-26; pg. 82, lines 11-25; pgs. 102-107).  Because of the varied factors effecting the calculation of the applicable statute of limitations for any individual account, Midland ultimately relies upon, and contracts for, its Collection Law Firms to make the final

determination of whether filing the action is appropriate based upon the particular state's laws.  (See Deposition Testimony of Rita Melconian Exhibit "G", pg. 41, lines 1-25; pg. 42, lines 1-7).

Even ignoring the highly-individualized inquiries that evidence fatal flaws in Plaintiff's latest class definition and which serve to underscore the lack of typicality as to the proposed class, class certification should be denied because Midland not only has comprehensive policies and procedures in place to ensure compliance with the FDCPA, those policies and procedures squarely and reasonably serve to prevent the filing of actions after the running of each debts applicable statute of limitation.  Class Actions are intended to deter and punish defendants who engage in a pattern and practice of abusive or violative behavior and are <u>not</u> intended to punish defendants for mere mistakes/errors made on a highly individualized basis by a Collection Law Firm, who has demonstrated expertise in the forums where it brings such collection actions.  Therefore, the underlying theory behind Plaintiff's latest class definition is flawed at its foundation, and is equally defective in its attempted application on a class-wide basis.

**B.    Midland Appropriately Referred Plaintiff's Debt to its Collection Law Firm**

Plaintiff in his Amended Motion uses a convoluted logic in its mischaracterization of Midland's practice of referring debts to its retained collections law firm as an "attempt to deceive consumers".  (Exhibit "E", pg. 5).  Contrary to this contention, Midland's intention is simply to attempt to lawfully collect upon the consumer's valid and delinquent debt obligations.  (Exhibit

"F", pg. 96, lines 16-23).  Moreover, the collection actions are only authorized by Midland for filing after undergoing a methodical evaluation and screening process by Midland, and by the individual processes of each of the Collection Law Firms, to determine whether filing a collection action is the best and appropriate method for collecting upon a particular debt. (Exhibit "G", pg. 40, lines 9-19; pg. 41, lines 5-9).

Here, and in all cases, Midland refers a debt to a Collection Law Firm prior to the expiration of its estimated statute of limitations.  (Exhibit "F" pg. 26, lines 1-8).  Once the debt is placed with a Collection Law Firm, Midland reasonably relies upon its retained counsel to calculate the actual statute of limitations and to file the collection action in a timely manner, based upon the relevant statute of limitations and exceptions for the particular States. (Exhibit "G" pg. 41, lines 5-9).

However, to reduce the likelihood of a collections action being filed after the statute of limitations, Midland has enacted several safeguards to reduce this risk.  One of these safeguards, currently in place, prevents all cases which are within 150 days of the estimated statute of limitations from being referred to a Collections Law Firm.  (Exhibit "F", pg. 26, lines 1-8).  At the time Plaintiff's debt was referred out for collections, Midland's policy screened all debts that were within 90 days of the estimated statute of limitations from being referred.  (Exhibit "F", pg. 26, lines 1-8).  If Midland's estimated statute of

limitation date was within the 90 day or the 150 day window, Midland would not refer the matter to a law firm to institute a collection action.[2]

Nevertheless, Plaintiff's debt was referred to Mann Bracken almost 8 months prior to the expiration of the estimated statute of limitations of his debt, on October 19, 2008.  (See YGC Notes for Plaintiff attached hereto as Exhibit "H").  When Plaintiff's debt was referred to Mann Bracken, Midland not only provided Mann Bracken with all relevant information to calculate the debt but also required Mann Bracken to perform its own investigation regarding the calculation for the appropriate statute of limitations for Pennsylvania regarding a credit card debt.  (Exhibit "G", pg. 41, lines 5-9; Exhibit "F", pg. 30, lines 8-14).  Midland did not provide its estimated statute of limitations to Mann Bracken, thereby requiring Mann Bracken to calculate the appropriate statute of limitations.

Plaintiff mischaracterizes Midland's carefully considered business decision to use collection lawsuits as a means to collect upon valid and delinquent debt obligations.  The premise that such conduct was engaged by Midland as a way to deceive unsophisticated consumers lacks any basis in fact.

### C.   Plaintiff Fails to Offer Any Evidence that Midland's Policies and Procedures are Inadequate

Plaintiff fails to describe Midland's rigorous and thorough due diligence and validation processes that it utilizes to ensure the completeness and quality of data it purchases. Plaintiff chose to avoid this description because Midland's

---

[2] Midland used the 90 day window until the end of July of 2009.  Thereafter, Midland used the 150 day window.  (Exhibit "F", pg. 26, lines 12-13).

process undermines Plaintiff's class allegations.  Prior to obtaining a portfolio, Midland engages in the Due Diligence process that screens the portfolio to confirm that all data points required for collection are available, the data is complete and that data passes Midland's quality checks.  (See Patrick Minford's Deposition Transcript pertinent parts attached hereto as Exhibit "I", pg. 43, lines 4-18).  After this process is concluded, the portfolio is valued.  (Exhibit "I", pg. 43, line 23). If Midland enters a winning bid and purchases the portfolio, then the final data is received by Midland and it undergoes a secondary valuation to ensure, "at a much more granular level", that all appropriate and available data is received.  (Exhibit "I", pg.43, lines 4-25).  Prior to obtaining the final portfolio, the seller examines the portfolio and excludes all accounts that are no longer eligible for sale.  (Exhibit "I", pg.44, lines10-17).

In addition to confirming that all appropriate and available data is received, based upon the initial due diligence process, Midland has a three-fold approach to certifying that the debt information is accurate.  First, the seller of the data represents and warrants that the data is accurate and the accounts are collectable.  (Exhibit "I", pg. 34, lines 6-9).  Second, Midland only deals with reputable sellers.  (Exhibit "I", pg. 34, lines 10-12).  Third, Midland complies with the FDCPA by sending the consumer a validation letter and providing them with the opportunity to dispute the debt or any of the account information.  (Exhibit "I", pg. 34, lines 13-19).  In fact, on May 1, 2008, Midland mailed an initial validation letter to Plaintiff.

Once the debt is acquired and put into Midland's system, an estimated statute of limitations is calculated based upon the various data points available.  (See Statute of Limitations Waterfall attached hereto as Exhibit "J").  Because there are numerous factors which influence the statute of limitations, Midland can only estimate the statute of limitations.  (Exhibit "G", pg. 42, lines 2-7).[3]  Nevertheless, Midland's method of calculation is designed to give the consumer the most conservative statute of limitations (favorable to the consumer) for the express purposes of avoiding the filing of time-barred actions.  (See Deposition Transcript of David Little attached hereto as Exhibit "K", pg. 64, lines 23-25).

After the initial data processing phases are concluded, Midland's Channel Integration department analyzes the debt to determine the best method of collection.  (Exhibit "F", pg. 9, lines 12-14).  The possible collection methods include: in-house collection calls, referral out to third party debt collectors or referral to a collection's law firm for legal action to recover on the debt —legal outsourcing.  (Exhibit "F", pg. 9, lines 15-24).  This continuous and dynamic process is designed to aid in Midland's fulfilling its compliance requirements under the FDCPA.  (Exhibit "I", pg. 56, lines 4-13).

---

[3] For example, in some states, bankruptcy actions may toll the statute of limitations, bounced checks for payment may restart the state-specific statute of limitations, some states may have adopted borrowing statutes borrowing the forum set out in the written agreement, affirmation by the debtor of the debt may restart the statute of limitations in other states, and presence outside the residential state may toll the statute of limitation.  It is these very details, among others, that effectively defeat certification in the present matter.

One part of this process, as previously stated, entails safeguards to prevent an account from being referred to a collection's firm that is outside the estimated statute of limitations or where the statute is close to expiration based on the estimate.  At the time Plaintiff's debt was referred out for judicial action, debts within 90 days of Midland's estimated statute of limitations were eligible for referral.  (Exhibit "F", pg. 26, line 16).  However, in July of 2009, this safeguard was increased to 150 days.  (Exhibit "F", pg. 26, lines 5-13).

Midland "absolutely [tries] to comply with all laws and regulations in everything [it does] and [it] expect[s] that [its] firms do that as well . . . ." (Exhibit "F", pg. 96, lines 16-20).  It considers the accounts to be its consumers and attempts to do "everything it can to treat them fairly and with respect." (Exhibit "F", pg. 96, lines 20-23).

Therefore, Midland contracts with its collection law firms to ensure compliance with the FDCPA and requires them to calculate the actual statute of limitations for each account prior to filing a collection action.  (See a true and correct copy of Midland's Retainer Agreement with Mann Bracken attached hereto as Exhibit "L").  Midland's retainer agreement in pertinent part states:[4]

> 2.2.1  <u>Manner of Collection.</u>  In accepting the placement of Accounts from MCM, the Firm shall abide by, and conduct all of its activities in a manner consistent with the then current Procedures and all applicable local, state, and federal laws, rules and regulations including, without limitation: (i) complying with the  Fair  Debt  Collection  Practices  Act,  as

---

[4] The retainer agreement cited here is Midland's retainer agreement with Mann Bracken.  The Mann Bracken retainer agreement exemplifies the standard retainer agreement Midland utilizes with its collection law firms during the applicable class period.  (Exhibit "L", pg. 99, lines 16-25; pg. 100, lines 3-13).

amended, the Right to Privacy Act of 1978, as amended, the Fair Credit Reporting Act, as amended, Gramm-Leach-Bliley Act, as amended, the rules adopted under each such statute and any and all applicable state and local laws and rules regarding Firm's and MCM's debt collection activities, including but not limited to late fees and interest; and (ii) avoiding threatening or implying that the Firm will take action that it does not intend to take or cannot take.  To the extent the Procedures at any given time conflict in any way with an applicable law, rule or regulations, the requirements of such applicable law, rule, or regulation  will govern and control the Firm's conduct and activities under this Agreement.  It is the Firm's sole responsibility and obligation to ensure that any suit filed in connection with an Account is brought in the name of the real party in interest . . .

(Exhibit "L").

The retainer agreement further requires the collection law firms to provide Midland with daily reports of all account activities, including updating the YGC database relevant codes.  (See Exhibit "L" ¶2.4.2).  Midland also reserved its right to audit all account documents and hold the law firms liable for all costs associated with the audit if the firm is found to be noncompliant. (See Exhibit "L" ¶ 6.2).

Further, the retainer agreement incorporates Midland Credit Management's Legal Network's Account Handling Procedures.  (See Exhibit B attached to Exhibit "L").  These procedures require the law firms to maintain accurate account codes on the YGC including "any codes related to an account not being suit worthy."  Midland's procedures further dictate, "the decision to file suit is at the Firm's discretion . . . The client expects the Firm to balance

14

the financial goals of the client with the Firms local expertise of the law and state."  (See Exhibit B attached to Exhibit "L").

Importantly, Midland's Account Handling Procedures require the Firm to "identify and promptly close all out of statute accounts (*no attempt to collect out of statute accounts should be made*)."  (See Exhibit B attached to Exhibit "L")(emphasis added).  Hence, Midland properly instructs its retained lawyers not to file suits outside the particular statute of limitations and to comply with all state and federal laws.  (Exhibit "L").

Plaintiff's argument that Midland's compensation policy for its  Collection Law Firms—contingent on gross dollars collected—encourages violation of the FDCPA by filing time-barred debts, overlooks the law firm's contractual and ethical obligations which require that only timely and legal actions be filed. (Exhibit "L", and see Model Rules of Professional Conduct R. 1.1, R. 3.3). Further, Midland does not base any of its compensation calculations for its law firms upon the number of suits file to avoid a negative incentive.  (Exhibit "F", pg. 47, lines 1-2).  As previously stated, the FDCPA does not prevent ethical and compliant debt collectors from carrying out their business activities.  See Teng, 885 F.Supp. at 65.

In an effort to articulate some basis for his claims, Plaintiff resorts to mischaracterization of Ms. Melconian's deposition testimony regarding the firm's calculation of statute of limitations.  (Exhibit "E", pg. 7n.5).  Ms. Melconian repeatedly testified, as did Ms. Murphy, that Midland relies on its Collection Law Firms to appropriately calculate the statute of limitations

because the calculation require individual investigation and the particular law firm are the _experts_ in the interpretation, and calculation, of their relevant state's statute of limitations.  (Exhibit "G", pg. 41, lines 5-25; pg. 42, lines 1-7).  Midland, in an effort to avoid filings outside the limitations, calculates an estimated statute of limitations expiration date and then limits referrals of cases to those which are not within 90-150 days of its estimated expiration date.[5]

In an effort to show that Midland's procedures are insufficient, Plaintiff incorrectly relies on the Maryland Agency's Summary Order to Cease and Desist (hereinafter "Summary Order") as evidence of Midland's alleged "practice of collecting on stale debt."   (See the Summary Order attached hereto as Exhibit "M").  This Summary Order merely represents the commencement of an investigation against Midland by the Maryland Agency on September 16, 2009.  This reliance by Plaintiff on the Summary Order is akin to relying on allegations in a civil action complaint as evidence of a violation rather than relying on any law or fact in support of this proposition.

However, the investigation by the Maryland Agency culminated in a settlement agreement, which _vacated_ all allegations and charges against Midland set forth in the Summary Order, including the allegations that Midland engaged in a "practice of collecting on stale debts."  (See a true and

---

[5] As explained above,  Midland's current policy is not to refer any accounts that are within 150 days of Midland's estimated statute of limitations expiration date.  (Exhibit "F", pg. 26, lines 7-8).  However, at the time Mr. Clavell's suit was filed, Midland only screened cases that were within 90 days of  Midland's estimated statute of limitations expiration date.  (Exhibit "F", pg. 26, lines 13-16).

correct copy of the Settlement Agreement attached hereto as Exhibit "M"). Plaintiff grossly misconstrues the allegations in the Summary Order as evidence of the practices and procedures of Midland and/or its compliance with the FDCPA, when, in fact, the Summary Order is nothing more than a listing of pre-investigation allegations made by the Maryland Agency, allegations that were abandoned by the Maryland Agency in the course of its investigation.   Therefore, any reliance upon this Summary Order is entirely speculative and misplaced. In fact, as the entire basis for Plaintiff's claims as to numerosity is premised on the Maryland Agency's "Complaint", Plaintiff's claims as to numerosity lack any basis in fact and certification should be denied on this issue alone.

Plaintiff also mischaracterizes Ms. Murphy's deposition testimony regarding the basis and results of Midland's Collection Law Firm's fraudulent actions investigation. (Exhibit "F", pg. 84, lines 10-22). Midland, as the client, properly relies upon its lawyers to comply with the terms of their respective retainer agreements and to accurately communicate all information regarding the collection suit. Midland discovered, through its own investigation, that a firm had engaged in a fraud against it by inaccurately reporting that lawsuits had been filed.   (Exhibit "F", pg.91, lines, 25; pg. 92, lines 1-3).   The fraud issue was not related to any statute of limitations issue.   (Exhibit "F", pg.91, lines, 25; pg. 92, lines 1-3).   However, Midland instituted more stringent auditing procedures, not required by the FDCPA, to prevent any future

fraudulent actions by its retained collection law firms.  (Exhibit "F", pg.  83, lines 23-25; pg. 84, lines 1-22).[6]

Importantly, Midland retains law firms throughout the United States to ensure that the lawyers who make the ultimate decision to file a collection action are also the individuals have the most knowledge and experience regarding their particular state's statute of limitations calculation and its exceptions.

Thus,  Plaintiff's Amended Motion for Class Certification should be denied as Midland's policies and procedures comport with their duties under the FDCPA and Plaintiff offers no material basis to rebut this conclusion.

> **D.    Plaintiff's Proposed Class is not Sufficiently Identifiable and Fails to Meet the Requirements of Fed. R.Civ.P. 23.**

Certification of the Plaintiff's proposed class is inappropriate.  Foremost, Plaintiff proposes a class that may include debts which were not filed outside the statute of limitations as the definition includes all time barred debts "as calculated from the last payment due date available in Defendant's records." This calculation does *not* provide the accurate statute of limitations date inasmuch as it ignores the numerous factors impacting on the calculation of statute of limitations.  (Exhibit "G", pg. 41, lines 5-25; pg. 42, lines 1-7).  These factors include, but are not limited to, state laws which calculate the statute of limitations from the charged-off date, tolling statutes, payments made after the initial default, and court's interpretation of the state's statute of limitations and

---

[6] The particular fraud occurred where a law firm advanced costs to Midland for litigation that it never pursued.

when the statute of limitations begins to accrue in a particular state.   (Exhibit "G", pg. 41, lines 5-25; pg. 42, lines 1-7).

Importantly, the individual issues arising from the proposed nationwide class members will drastically vary.  These issues include the "variety of credit card member agreements with differing term including application of different state laws concerning statutes of limitations, differing arbitration agreements, agreements containing class action waivers, differing defenses to state collection actions which would render the required typicality of the class destroyed." Mansfield, 2011 U.S. Dist. LEXIS 34102, at *16.

Thus, as will be discussed in more detail below, class certification is inappropriate in the present matter.

**IV.     PLAINTIFF'S CLASS CERTIFICATION SHOULD BE DENIED AS PLAINTIFF FAILS TO MEET THE REQUIREMENTS OF FED. R.CIV.P 23(A) AND (B)(3)**

A class may be certified only if the court is "satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. See Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006)(citing Gen. Tel. Co. Sw. v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed. 2d 740 (1982)).   In addition, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2) or (3)." Beck, 457 F.3d at 297 (citing In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 527 (3d Cir. 2004).   The Plaintiff moving for class certification has the burden of proving all requirements of Rule 23 are met.   Agostino v. Quest Diagnostics, Inc.,

CIV.NO.04-4362, 2010 U.S. Dist. LEXIS 135310, *9-10 (D.N.J. Dec. 22, 2010)(citing <u>Gen. Tel. Co. Sw.</u>, 457 U.S. at 161).

> The Third Circuit requires that:

>> Every putative class must satisfy the four requirements of *Rule 23(a)*: (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy). *Fed. R.Civ.P. 26(a)(1)-(4).*

<u>In re Community Bank of N.Va.</u>, 622 F.3d 275, 291 (3d Cir. 2010).  The Rule 23(a) prerequisites, outlined above, are mandated by constitutional due process requirements.  <u>Hansberry v. Lee</u>, 311 U.S. 32 (1940).

Here, Plaintiff concludes that his proposed class satisfies the requirements of Rule 23(b)(3).  The requirements of Rule 23(b)(3) provide that a class may only be certified if, in addition to the requirements of 23(a), "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods of fair adjudication of the controversy."  Fed. R. Civ. P. 23(b); <u>see</u> <u>Danvers Motor Co. v. Ford Motor Co.</u>, 543 F.3d 141, 147 (3d Cir. 2008).  Predominance is similar to Rule 23(a)'s requirement of commonality; however, it is a much more demanding analysis.  <u>Agostino</u>, 2010 U.S. Dist. LEXIS 135310, at *10.  Class treatment makes no sense if there are no common issues as the trial court would gain nothing but logistical

headaches from the combination of the cases for trial.   Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 55 (3d Cir. 1995)(hereinafter "Baby Neal").

Additionally, "Courts have implied two prerequisites to class certification that must be satisfied prior to addressing the requirements of 23(a): (1) the class must be sufficiently defined so that the class is definable; and (2) the named representative must fall within the proposed class."   Oshana v. The Coca-Cola Company, 225 F.R.D. 575, 580 (N.D. Ill. 2005).   The class therefore cannot be certified "unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."   Aiken v. Obledo, 442 F. Supp. 628, 658 (E.D. Cal. 1977)(quoting Wright and Miler, Federal Practice and Procedure, § 1710 at p. 582).

In other words, "if the class definition requires a determination on the merits before a member can be identified, the plaintiffs have effectively reinstated 'one-way intervention,' which the 1966 Amended to Rule 23 was designed to eliminate."   Eversole v. EMC Mortgage, Corp., No. 05-124-KSF, 2007 WL 1558512, *4-5 (E.D. Ky., May 29, 2007)(citing American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 547, 94 S. Ct. 756 (1974)).   Hence, class certification should be denied when the court must conduct a mini-hearing on the merits with respect to each potential class member, as would be required by the Court in this case.   See Id. at *4-6.   Other courts have denied class certification on similar grounds.   See, e.g., Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa. 1995) (court denied class certification under Rule

23(b)(3) where plaintiff defined the class as persons who have received unsolicited facsimile advertisements" because that definition, *like the Clavell class definition*, "requires addressing the central issue of liability to be decided in the case. Determining a membership in the class would essentially require a mini-hearing on the merits of each case"); Mueller v. CBS, Inc., 200 F.R.D. 227, 233 (W.D. Pa. 2001)(same in ERISA context); Sanneman v. DaimlerChrysler Corp., 191 F.R.D. 441, 445 (E.D. Pa. 2000)(same in consumer protection claim); Kenro Inc. v. Fax Daily, Inc., 962 F. Supp. 1162, 1170 (S.D. Ind. 1997)(the proposed class definition "would impermissibly require this Court to conduct individual inquiries into the merits of each potential plaintiff's case in order to determine their qualifications as to class members").

In the present matter, even if we are able to ascertain any potential members of the proposed class, the Court would be required to engage in an individual inquiry for each prospective class member to determine the applicable statute of limitations (in conjunction with each exception (*supra*)) to ascertain whether the particular collection action was timely filed, for the purposes of determining whether each putative class member is qualified for inclusion in the putative class. Plaintiff draws the erroneous conclusion, refuted through discovery, that Midland's databases could identify the members of the class. The information that could be provided, if any,[7] would

---

[7] Xenia Murphy provided testimony regarding the ability of Midland's databases to run searches based upon various data points. Ms. Murphy testified that she was unable to run a nationwide search through Midland's databases. (Exhibit "F", pg. 73, lines 18-25; pg. 74, lines 1-3).

be deficient as Midland's databases contain the *estimated* statute of limitations assessments and do not incorporate the actual statute of limitations.  Further, the databases and do not account for the variables impacting on the running of such statutes as set out below.[8] (Exhibit "F", pg. 123, lines 13-14).

Plaintiff fails to establish that his purported class is sufficiently ascertainable.  Additionally, his Amended Motion for Class Certification fails to satisfy Plaintiff's burden of proof or demonstrate that his proposed class satisfies any of the requirements set out in Rule 23(a) and Rule 23(b)(3); therefore, Plaintiff's motion for class certification should be denied.

### A.    Plaintiff Fails to Meet the Requirements of Rule 23(a)

#### 1.    *Plaintiff Fails to Present Evidence of Numerosity*

Plaintiff's argument that his purported class of individuals in this matter is sufficiently numerous is based on mere speculation, lacking any evidentiary basis whatsoever.  While a numerosity inquiry may include assumptions if the exact class size is unknown, those assumptions must be based on evidence.  Karnuth v. Rodale, Inc., 2003 U.S. Dist. LEXIS 12095 (E.D. Pa. July 2, 2003)(quoting Schwartz v. Upper Deck Co., 183 F.R.D. 672, 681 (S.D.Cal. 1999) (Mere speculation is insufficient to demonstrate numerosity for the purposes of certification.  A ". . . higher level of proof than mere common sense impression or extrapolation from cursory allegations is required")); see also

---

[8] As evident from the Statute of Limitations Waterfall diagram, Exhibit "J", Midland's calculation of the estimated statutes of limitation is sometimes based upon incomplete information, and, in those instances, the calculation is done to provide the earliest possible date of expiration in an attempt to prevent the filing of time-barred actions.  (See also Exhibit "K", pg. 64, lines 23-25; pgs. 64-67).

Fahey v. Encore Financial, 2005 WL 2739323 at *2 (N.D. Ohio, Oct. 25, 2008) (holding that absent "a specific count, the Plaintiff must rely on evidence that shows numerosity is satisfied.").

Where a plaintiff's assertion of numerosity is pure speculation or based upon unproven allegations, the motion for class certification fails.  See Edge v. C. Tech Collections, Inc., 2001 U.S. Dist. LEXIS 13490, *14-15 (E.D.N.Y. 2001)(Where the plaintiff failed to meet his burden of proving numerosity by making a broad assertion that hundreds of people received notices from the collection agency rather than putting forth evidence of the number of class members that actually received notices that were similar to the one he received)(citing Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968)); Reese v. Arrow Financial Servcs. LLC, 202 F.R.D. 83, 2001 U.S. Dist. LEXIS 14359, *21 (D.Conn. 2001)(holding that "bare assertions of numerosity are insufficient" and Plaintiff must provide a "reasonable estimate or provide some evidence of the number of class members").  Further, the mere reliance on the "general characteristics of the defendants' business" is insufficient to prove numerosity. Id.

Importantly, the numerosity requirement cannot be established on the strength of bare and *speculative* allegations that, because one person's rights were violated, other individual's rights must also have been violated.  Huntley v. Law Office of Richard Clark, PLLC, 262 F.R.D. 203, 205 (E.D.N.Y. Oct. 23, 2009)(Denying class certification because plaintiff's evidence offered to establish numerosity was purely speculative).

24

In <u>Huntley</u>, the plaintiff alleged that a collector made a harassing telephone call to her concerning threats to garnish wages if she did not make payment on her debt obligation.  <u>Id.</u> at 204.  The plaintiff alleged, *inter alia*, that, based on the duration of the collector's employment with defendant and by the nature of the collectors duties, it could be inferred that the collector must have made numerous similar harassing and threatening calls to consumers.  <u>Id.</u>  Plaintiff's argument in <u>Huntley</u> solely rested upon her assertion that because of the collector's tenure and duties she must have made similar calls as the one received by Plaintiff.   The defendant challenged Huntley's proposed class arguing that because there was no evidence of record (other than Plaintiff's speculative allegation) suggesting other consumers received threatening calls from Defendant's collector, that she failed to establish the numerosity requirement pursuant to Rule 23(a).  <u>Id.</u> at 204-05.  The court agreed with the defendant and denied class certification.

Moreover, the Eastern District of Pennsylvania denied class certification where the only way to determine whether numerosity existed, as in Clavell, was to "analyze the merits of each class members case, which … is inappropriate."  <u>Kondratick v. Beneficial Consumer Discount</u>, 2006 WL 305399 at *7-10 (E.D. Pa., Feb. 8, 2006)(denying class certification of a FDCPA claim because the plaintiff could not establish numerosity).

The facts presented by Plaintiff in his Amended Motion for Class Certification in support of numerosity are just as speculative as the allegations in the above-cited cases.  In the present matter, Plaintiff attempts to establish

numerosity based on the mere assertion that if the "Maryland Agency had reason to concluded that over 20,000 stale collection actions had been filed in a period of eight years" then Midland *must* have filed other stale collection actions in the course of the one-year class period.  (Exhibit "E", pgs. 11-12). Plaintiff offers no facts in support of his speculative conclusions premised on the rejected summary allegations by the Maryland Agency in support of sufficient numerosity.  In fact, Plaintiff provides no evidence of record to support his conclusions as to numerosity.  Instead, Plaintiff relies solely on his impression of the characteristics of MCM's business and refuted allegations against the company to speculate as to numerosity.

Plaintiff proffers no evidence as to numerosity because numerosity does not exist or, at the very least, it cannot be ascertained based on the fatally flawed class definition.  Rather than offer any facts to support numerosity, Plaintiff adopts allegations by the Maryland Agency as evidence to try to meet his burden as to numerosity, willfully ignoring the final determination by Maryland Agency, which vacated the very allegations that Plaintiff relies upon for his "proof" of numerosity.  As explained above, the Maryland Agency Summary Order did not "conclude" that Midland filed over 20,000 stale collections, but instead alleged this proposition.  (Exhibit "M").  Dispositively, the allegations relied upon by Plaintiff in his effort to show sufficient numerosity were vacated by the Maryland Agency at the conclusion of the Agency's investigation of Midland.  (Exhibit "N", ¶¶ 13, 14, pg. 10).

Plaintiff's reliance on a vacated Summary Order for the purpose of proclaiming numerosity in the instant case is fatally flawed and wholly unsupported.  In fact, Plaintiff's sole basis for numerosity has been plainly rejected by the Maryland Agency.  (Exhibit "N", ¶¶13, 14, pg. 10).  Plaintiff's conclusions as to numerosity are not only speculative but plain wrong. Therefore, Plaintiff fails to approach, let alone satisfy, his burden of proof as to numerosity. Since, Plaintiff fails to demonstrate the requirements set forth in Fed.  R. Civ. P. 23(a)(1) have been satisfied, class certification should be denied.

### 2.      *The Proposed Class Lacks Commonality*

Plaintiff contends that common questions of law or fact exist between the Plaintiff and the prospective class.   Specifically, the Plaintiff alleges the common issues include:

1. Whether Midland permitted the filing of stale debt collection actions; and,

2. Whether Midland's procedures and practices are adequate under the FDCPA to prevent filing of collection actions on stale debts.

   (Exhibit "D", pg. 12-13).

Rule 23(a)(2) requires that "there are questions of law or fact common to the class," and Rule 23(b)(3) requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  Fed. R. Civ. P. Rule 23(a)(2) and 23(b); See also Georgine v. Amchem Prods., 83 F.3d 610, 626 (3d Cir. 1996).

Even considering Plaintiff's assertion that two common issues apply to this highly speculative class of individuals, Plaintiff cannot meet Rule 23's requirements for class certification because there are simply too many issues of fact and law unique to each proposed class member.  In fact, these unique issues overwhelmingly predominate the alleged common issues proposed by Plaintiff, making class certification improper.    Indeed, the following predominant individual legal and factual issues cannot be denied by Plaintiff:

- Was there a written agreement that governed the debt, and if so, did it contain a "choice of law" provision;

    - If it did, then how does each state treat contractual choice of law provisions as pertaining to statute of limitations and tolling provisions (e.g., some states apply their own statute of limitations regardless of a contractual choice of law provision, whereas others, such as New York and New Hampshire, apply the law chosen by the parties).

- Are there various statute of limitations that may apply in each state specific to the type of debt at issue;

- What are each state's tolling provisions that may apply to the individual class members, such as those pertaining to:

    - Bankruptcy;
    - Absence of the debtor from the jurisdiction, etc;

- Are there specific laws governing acknowledgements of the debts such that the limitations period is revived.  See e.g., Charbonneau v. Mary Jane Elliott, P.C., 611 F. Supp. 2d 736, 742 (E.D. Mich. 2009)("Pursuant to MCL § 600.5866 an acknowledgment contained in a writing can revive a debt that has been barred by the statute of limitations.  The defendant has provided a copy of the letter signed by the plaintiff, moreover, plaintiff does not contest the authenticity of the writing.  Accordingly, the Court is persuaded that the statute of limitations was revived by plaintiff's April 3, 2007 letter acknowledging his debt.");

- How does each state determine when the applicable statute of limitations begins to run, (e.g. by default, by date of last purchase, by date of last payment, by charge off);

- Does each state restart or toll the statute of limitations because of partial payments;

- Is it possible that a potential class member waived or is otherwise barred from raising the statute of limitations defense under each state's law;

- What are each state's differing laws regarding *res judicata*, *collateral estoppel*, *judicial estoppel*, or similar doctrines that may preclude the putative class members from raising the statute of limitations issue;

- Do the underlying agreements contain class waiver provisions and whether such agreements are approved in a particular state;

- Whether insufficient checks ("bounced checks") for payment restart the statute of limitations in a particular state; and

- Have any of the putative class members previously settled the dispute and signed a release of any and all claims; etc.?

Indeed, "[b]ased primarily on the burden of applying multiple states' laws," an ***overwhelming number*** of federal courts have denied certification of similar nationwide class actions.   See e.g., Mansfield, 2011 U.S. Dist. LEXIS 34102 (the same class definition raised in the Clavell case against the same Defendant, with certification being denied); Schnall v. AT&T Wireless Services, Inc., No. 80572-5, 2010 WL 185943, *4-5 (Wash. Jan. 21, 2010).[9]   Federal

---

[9] The Schnall court cited the following cases in support of this finding: Stirman v. Exxon Corp., 280 F.3d 554, 564-66 (5th Cir. 2002); Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1187, amended by 273 F.3d 1266 (9th Cir. 2001); Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 678 (7th Cir. 2001); In re LifeUSA Holding, Inc., 242 F.3d 136, 147 (3d Cir. 2001); Spence v. Glock, Ges.m.b.H., 227 F.3d 308, 316 (5th Cir. 2000); Andrews v. Am. Tel. & Tel. Co., 95 F.3d 1014, 1025 (11th Cir. 1996); Castano v. Am. Tobacco Co., 84 F.3d

734, 740 (5th Cir. 1996); <u>Georgine</u>, 83 F.3d at 617 *aff'd sub nom.*; <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 613 (1997); <u>In re Am. Med. Sys. Inc.</u>, 75 F.3d 1069, 1089 (6th Cir. 1996);  <u>In re Rhone-Poulenc Rorer, Inc.</u>, 51 F.3d1293, 1302 (7th  Cir. 1995); <u>Walsh v. Ford Motor Co.</u>, 257 U.S.App. D.C. 85, 807 F.2d 1000, 1010-11 (1986); <u>In re Citigroup, Inc.</u>, No. CIV.A.10011912REK, 2001 WL 1682865, at *3 (D. Mass. Dec. 19, 2001)(not reported in F.Supp.2d); <u>Hammett v. Am. Bankers Ins. Co.</u>, 203 F.R.D. 690, 700-02 (S.D. Fla. 2001); <u>Duncan v. N.W. Airlines, Inc.</u>, 203 F.R.D. 601, 605, 610-14 (W.D. Wash. 2001); <u>Neely v. Ethicon, Inc.</u>, No. 1:00-CV-00569, 2001 WL 1090204, at *8-11, *15 (E.D. Tex. Aug. 15, 2001) (not reported in F.Supp.2d); <u>Begley v. Acad. Life Ins. Co.</u>, 200 F.R.D. 489, 497 (N.D. Ga. 2001); <u>Oxford v. Williams Cos., Inc.</u>, 137 F.Supp.2d 756, 764 (E.D. Tex. 2001); <u>Jones v. Allercare, Inc.</u>, 203 F.R.D. 290, 308 (N.D. Ohio2001); <u>Stipelcovich v. DirecTV, Inc.</u>, 129 F.Supp.2d 989, 995 (E.D. Tex. 2001); <u>Shelley v. AmSouthBank</u>, No. CIV.A.97-1170-RV-C, 2000 WL 112778, at *8-10 (S.D. Ala. July 24, 2000)(not reported in F.Supp.2d) *aff;d*, 247 F.3d 250 (11th Cir. 2001); <u>Lyon v. Caterpillar, Inc.</u>, 194 F.R.D. 206, 220-23 (E.D. Pa. 2000); <u>Adams v. Kan. City Life Ins. Co.</u>, 192 F.R.D. 274, 277-78 (W.D. Mo. 2000); <u>Hallaba v. Worldcom Network Servs. Inc.</u>, 196 F.R.D. 630, 645 (N.D. Okla. 2000); <u>Velasquez v. Crown Life Ins. Co.</u>, MDL1096 No. CIV.A.M-97-064, 1999 WL 33305652, at * 4-7 (S.D. Tex. Aug. 10, 1999)(not reported in F.Supp.2d); <u>Clay v. Am. Tobacco Co.</u>, 188 F.R.D. 483, 497-98, 503 (S.D. Ill. 1999); <u>Carpenter v. BMW of N. Am., Inc.</u>, No. CIV.A.99-CV-214, 1999 WL 415390, at *4, *8 (E.D. Pa. June 21, 1999)(not reported in F.Supp.2d); <u>Chilton Water Auth. V. Shell Oil Co.</u>, No. CIV.A.98-T-1452-N, 1999 WL 1628000, at *8 (M.D. Ala. May 21, 1999)(not reported in F.Supp.2d); <u>Powers v. Gov't Employees Ins. Co.</u>, 192 F.R.D. 313, 319-20 (S.D. Fla. 1998); <u>Rothwell v. Chubb Life Ins. Co. of Am.</u>, 191 F.R.D. 25, 33 n.7 (D.N.H.1998); <u>Dhamer v. Bristol-Myers Squibb Co.</u>, 183 F.R.D. 520, 532-34 (N.D. Ill. 1998); <u>Weikel v. Tower Semiconductor Ltd.</u>, 183 F.R.D. 377, 402-03 (D. N.J. 1998); <u>In re Jackson Nat'l Life Ins. Co. Premium Litig.</u>, 183 F.R.D. 217, 225 (W.D. Mich. 1998); <u>Chin v. Chrysler Corp.</u>, 182 F.R.D. 448, 465 (D. N.J. 1998); <u>Marascalco v. Int'l Computerized Orthokeratology Soc'y inc.</u>, 181 F.R.D. 331, 340-41 (N.D. Miss. 1998); <u>In re Ford Motor Co. Vehicle Paint Litig.</u>, 182 F.R.D. 214, 222-26 (E.D. La. 1998); <u>Fisher v. Bristol-Myers Squibb Co.</u>, 181 F.R.D. 365, 368 (N.D. Ill. 1998); <u>Poe v. Sears, Roebuck & Co.</u>, 1 F.Supp.2d 1472, 1476 (N.D. Ga. 1998); <u>Tylka v. Gerber Prods. Co.</u>, 178 F.R.D. 493, 496-99, 502 (N.D. Ill. 1998); <u>Peoples v. Am. Fid. Life Ins. Co.</u>, 176 F.R.D. 637, 646 (N.D. Fla. 1998); <u>In re Ford Motor Co. Bronco II Prod. Liab. Litig.</u>, 177 F.R.D. 360, 376 (E.D. La. 1997); <u>Clement v. Am. Honda Fin. Corp.</u>, 176 F.R.D. 15, 23 n.10-12 (D. Conn. 1997); <u>Dubose v. First Sec. Sav. Bank</u>, 183 F.R.D. 583, 387(M.D. Ala. 1997); <u>In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.</u>, 174 F.R.D. 332, 347-52 (D.N.J. 1997);  <u>In re Stucco Litig.</u>, 175 F.R.D. 210, 219 (E.D.N.C. 1997); <u>Smith v. Brown & Williamson Tobacco Corp.</u>, 174 F.R.D. 90, 100 (W.D. Mo. 1997); <u>Rohlfing v. Manor Care, Inc.</u>, 172 F.R.D. 330, 341-42 (N.D. Ill. 1997); <u>In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.</u>, 170 F.R.D. 417, 422-27

Courts have greater impetus to deny certification of nationwide classes when material conflicts exist between the fifty state laws that the court would need to apply to adjudicate the class claims.   See Pilgrim v. Universal Health Card, LLC, Civ.No. 5:09CV879, 2010 WL 1254849, *4 (N.D. Ohio, March 25, 2010)(citing In re McDonald's French Fries Litig., 257 F.R.D. 669, 637-74 (N.D. Ill. 2009)).  The Pilgrim Court held that because each individual class members' claim would have to be assessed and adjudicated under his/her particular state laws, a nationwide class was not manageable.  Id.

Critically, to even begin addressing Plaintiff's two alleged common issues - whether Midland permitted the filing of stale debt collection actions; and whether Midland's procedures and practices are adequate under the FDCPA to prevent filing of collection actions on stale debt - this Court would be required to conduct an individual analysis of each putative member's account history, the written agreement, investigation into the nature of the debt (credit card, auto deficiency, judgment, etc.), payment history, class waiver language, and the applicable law of each state (for the statute of limitation predicates and borrowing statute issues) to first determine if the individual is a class member.

This is an even more onerous proposition because the class is not ascertainable as demonstrated by Plaintiff's reliance on repudiated allegations by the Maryland Agency for the purposes of speculating as to sufficient

(E.D. La. 1997);  Mack v. Gen. Motors Acceptance Corp., 169 F.R.D. 671, 679 (M.D. Ala. 1996); Harding v. Tambrands Inc., 165 F.R.D. 623, 631-33 (D. Kan. 1996); Barbarin v. Gen Motors Corp., No. CIV.A.84-0888, 1993 WL 765821, at *3 (D.D.C. Sept. 22, 1993)(not reported in F.Supp.2d); Raye v. Medtronic Corp., 696 F.Supp. 1273, 1275 (D. Minn. 1988); and Feinstein v. Firestone Tire & Rubber Co., 535 F.Supp. 595, 608 (S.D.N.Y. 1982).

numerosity.  What is clear is that Plaintiff has wholly failed to present a viable argument that common issues predominate over individual issues for the purpose of certification.  To the contrary, individual issues of both fact and law predominate rendering the class unmanageable.  Midland contends that Plaintiff has failed to articulate commonality for the purposes of certification and Plaintiff's Amended Motion for Class Certification should be denied.

### 3.    *Plaintiff 's Class Lacks Typicality and Adequacy*

To establish typicality, it must be determined "whether the named plaintiff['s] claims are typical, in common-sense terms, of the class, thus suggesting that that the incentives of the plaintiff[ ] are aligned with those of the class." Beck, 457 F.3d at 296 (*citing* Baby Neal, 43 F.3d at 55).

The Court in Beck stated that the Supreme Court has noted that typicality and adequacy inquiries often "tend to merge" because both look to potential conflicts and to "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Beck, 457 F.3d at 296 (citing Amchem, 521 U.S. at 626 n.20 (quoting Gen. Tel. Co. SW., 457 U.S. 147, 157 n.13, 102 S. Ct. 2364, 72 L. Ed. 740 (1982)).  As further stated in Beck, "[B]ecause of the similarity of these two inquiries, certain questions—like whether a unique defense should defeat class certification—are relevant under both."  Beck, 457 F.3d at 296.  As such, Plaintiff's typicality and adequacy arguments will be argued in unison.

Typicality can be destroyed with the presence of even an arguable defense against the named plaintiff or small subset of the class, and could possibly bring into question the adequacy of the named Plaintiff as class representative. J.H. Cohn & Co. v. Am. Appraisal Assocs., 628 F.2d 994, 999 (7th Cir. 1980). The Third Circuit has emphasized, as have other courts of appeals, that the challenges presented by a defense unique to the class representative and the interest involved might not be aligned with those of the class. The representative, therefore, may be required to devote time and effort to the particular defense at the expense of issues that are common and controlling for the class, thus destroying the required typicality. Beck, 457 F.3d at 296 (citing Gary Plastic Packaging v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990)("[T]here is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); see Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992); J.H. Cohn & Co., 628 F.2d at 999.

In March of 2011, the District Court of the Southern District of California denied class certification for an almost identical proposed class,[10] determining that:

---

[10] In Mansfield, the proposed class was defined in the complaint as follows:

> All persons Midland filed a lawsuit against to collect an alleged credit card debt incurred primarily for personal, family or household purposes where Midland's records do not show that a payment was made within the applicable statute of limitations prior to filing of the action and which lawsuit was pending at any time from and after February 24, 2008.

> The issues arising from the putative nation-wide class members in this case will vary significantly. For example, there are a variety of credit card member agreements with differing terms including the application of different state laws concerning statutes of limitations, differing arbitration agreements, agreements containing class action waivers, differing defenses to state collection actions *which would render the required typicality of the class destroyed.*

Mansfield, 2011 U.S. Dist. LEXIS 34102, * 16.

In the present matter, numerous issues of fact and state law unique to *each* proposed class member make it impossible for Plaintiff to satisfy Rule 23(a)'s requirements of typicality and adequacy of representation. Such issues include, but are not limited to:

- Was there a written agreement relative to the account and did it contain a "choice of law provision governing the applicable law in each class member's case;

- Do the written agreements contained arbitration clauses;

- Do the written agreements contain class action waivers;

- Was the limitation period tolled for any reason, such as:
  o Bankruptcy;
  o Absence of the debtor from the jurisdiction;
  o Incapacity;
  o Incarceration; etc.;

- Was there an acknowledgment of the debt under the applicable state law that reset the limitations period;

- Was there an agreement by the debtor to make payments or were payments actually made by the debtor, hence reinstating the limitations period;

- Did any of putative class members already litigate the issue of statute of limitations;

- Does the *bona fide* error defense apply in each case regarding Midland's reliance on information received from the sellers of the debts.  See e.g. <u>Moya v. Hocking</u>, 10 F.Supp 2d 847 (W.D. Mich. 1998)(holding that the defendants were entitled to the bona fide error defense because they reasonably relied on the data provided by the seller, and, based on the supplied information, determined the accounts were within the statute of limitations); <u>Charbonneau v. Mary Jane Elliott, P.C.</u>, 611 F. Supp. 2d 736, 743 ( E.D. Mich. 2009)(same);

- Have any of the putative class members previously settled the dispute and signed a release of any and all claim; etc.?

The myriad of potential defenses unique to each class member provides further illustration as to why Plaintiff's claims are not typical of the claims of the putative class and why Plaintiff cannot be an adequate representative.  It not that Plaintiff is inadequate, but that the class he seeks to represent consists of a such a degree of factual and legal variation that unique defenses would surely exists if such a class was ascertainable.

Moreover, Plaintiff's most recent nation-wide class definition requires the calculation of the statute of limitations to be based off the last payment date, contrary to the method of calculation of the statute of limitations under several states' statutory guidelines.

This conflict between state law and the class definition creates an irresolvable interclass conflict.  <u>See</u> <u>Barabin v. Aramark Corp.</u>, 210 F.R.D. 152, 159 (E.D. Pa. Oct. 7, 2002)(citing <u>Baby Neal</u>, 43 F.3d at 55)("This 'typicality' requirement is intended to safeguard against interclass conflicts and to insure that the interests of the named plaintiff[ is] more or less coextensive with those of the class such that the class action will be fully, fairly and vigorously

prosecuted."). Plaintiff's attempt to define a class that does not even begin to consider the appropriate measuring sticks for running (and tolling) of each state's statute of limitations for the collection of debt arising from written agreements. By this very definition, and his failure to appreciate the individualized nature of the putative class claims, Plaintiff reveals that he is an inadequate class representative.

Plaintiff's fails to meet the 23(a) requirements of typicality or adequacy, further exemplifying why certification of Plaintiff's proposed nation-wide class is inappropriate.

### B.      Plaintiff Fails to Satisfy the Requirements of Rule 23(b)

Plaintiff seeks certification of under Federal Rule of Civil Procedure 23(b)(3). Rule 23(b)(3) provides that a class may only be certified if, in addition to meeting the requirements of Rule 23(a), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); Danvers Motor Co., 543 F.3d at 147. "Where an action is to proceed under Rule 23(b)(3), the commonality requirement [of Rule 23(a)] is subsumed by the predominance argument." Danvers Motor Co., 543 F.3d at 148 (citing Georgine, 83 F.3d at 626).

### 1.      Individual Issues Predominate Over the Proposed Common Issues of Law and Fact

Here, Plaintiff broadly concludes that the questions of law and fact, which he perceives are common to members of the class predominate over any questions affecting only individual members and that the numerous individual defenses "present common issues for adjudication or are false conflicts."

36

(Exhibit "E", pg. 15).   However, as other Federal Courts have held, these individualized issues, especially individual questions of state law, do predominate over the alleged common questions of law and fact.   See Infra., Sec. II.A.2. n.4; Mansfield, 2011 U.S. Dist. 34102.

The issue of predominance is closely intertwined with the mandatory commonality component of Rule 23(a).   However, the predominance inquiry is far more stringent.   Agostino, 2010 U.S. Dist. LEXIS 135310, at *32.   Where Plaintiff fails to demonstrate that claims of the purported class can be proven upon generalized, class-wide proofs but rather require examination of each class member's individual, fact-intensive transaction, then the predominance requirement is not satisfied.   Zinser, 253 F.3d at 1189.   "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate . . . .   Moreover, when individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified."   Id.

When multiple state laws must be consulted to answer the proposed common questions of law and fact, "the district court must determine whether variations in state law defeat predominance.   Plaintiff[] bear the burden of demonstrating that differences among the applicable state laws do not pose insuperable obstacles to the management of the class.   Differences in state law must be identified as they threaten to swamp any common issue and defeat predominance."   Agostino, 2010 U.S. Dist. LEXIS 135310, at *32 (internal

citations omitted)(finding that "the sheer number of state laws which would apply in and of itself minimizes the advantages that class treatment is meant to provide."); see Castano, 84 F.3d at 741, 750.   Here, Plaintiff's class description—"All persons against whom Defendant sued . . . *on time barred debt . . .* "—alone requires the application of multiple state laws and defeats the predominance of the alleged common issues.

Although Plaintiff vainly attempts to circumvent the nuances as to individual state laws governing the calculation of their respective statutes of limitation, to ascertain whether a violation in fact occurred, and whether the class member is entitled to relief, still requires a case-specific investigation, including analysis of individual account information, review of underlying written agreements, relevant bankruptcy dockets, residential history, and payment history, the state specific tolling and borrowing provisions and investigation into the relevant defenses as to each individual claim.   Thus, even if Plaintiff can identify a viable class, mini-trials on an individual basis would be necessary prior to determining whether any individual fell within the defined class and would be entitled to relief.

Because of the variety of state laws, written agreements, and individualized conduct by each putative member of the theoretical class, Plaintiff cannot realistically contend that class issues predominate over individual issues and Plaintiff's Amended Motion for Class Certification should be denied because common questions of law and fact do not predominate over individual questions.

38

### 2.      Class Treatment is Not the Superior Method to Litigate Plaintiff's Claims.

There are four nonexclusive factors that should be considered under the provisions of Rule 23(b)(3): (1) the interest of the individual member of the class in controlling the prosecution of the action, (2) the extent of litigation commenced elsewhere by class members, (3) the desirability of concentrating claims in a given forum, and (4) the management of difficulties likely to be encountered in pursuing the class action. Danvers Motor Co., 543 F.3d at 149. For a Plaintiff to establish superiority "the class action must be superior to, 'and not just as good as, other available methods of handling the controversy. Such a determination lies in the court's discretion.'" Abby v. City of Detroit, 218 F.R.D. 544, 549 (E.D. Mich. 2003)(quoting Beebe v. Pac. Realty Trust, 99 F.R.D. 60, 73 (D.Or. 1983)).

First, there is ample interest of each member in "individually controlling the prosecution or defense of separate actions."  Federal Rule 23(b)(3)(A). Generally, "[w]here damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." Zinser, 253 F.3d at 1190.  However, statutes such as the FDCPA that allow statutory damages plus the ability to recover attorneys' fees and costs, provide substantial incentives to bring meritorious individual suits.  See e.g., Hyderi v. Wash. Mut. Bank, FA, 235 F.R.D. 390 (N.D. Ill. 2006) ("Precedent teaches that the availability of statutory damages plus the ability to recover attorneys fees and costs provides substantial incentives to bring meritorious individual suits."); see also, 5 Moore's Federal Practice § 23.46[3][a] at 23-27 ("[I]f a claim is based

39

on law that permits the prevailing party to recover the cost of litigation  . . . a class action is less likely to be the superior method of proceeding").

As Plaintiff notes in his Amended Motion, a virtually identical class action had already been commenced by members of the proposed class. (Exhibit "D", pg. 17).   In that case, <u>Mansfield v. Midland Funding</u>, Mr. Mansfield's motion for class certification was denied.   (Exhibit "A"). Nevertheless, there still exists a high probability that the extent of Plaintiff's litigation has already commenced elsewhere by purported class members.

Importantly, Plaintiff's putative class necessarily consists of class members for which lawsuits have been filed on behalf of Midland by Collection Law Firms.  These purported class members were required to challenge the statute of limitations as an affirmative defense or waive the defense.  Thus, for each potential class member, whether or not the limitations period was exceeded, is currently being litigated or has already been litigated.  The risk of multiplicity of proceedings and of inconsistent adjudications is both obvious and staggering, especially considering a class action that is more or less identical to the instant action was already instituted and a motion for class certification premised on similar arguments as those Plaintiff is attempting to advance in his instant motion has been denied. Mansfield, 2011 U.S. Dist. LEXIS 34102.   It would be improper to grant class relief when any potential class member has already lost or stands to lose the statute of limitations challenge in the underlying collections action (or where res judicata or estoppel precludes participation in this proposed class).

40

The third factor, "desirability or undesirability of concentrating the ligation of the claims in the particular forum" again weighs heavily in favor of denying class certification.  Fed. R.Civ.P. 23(b)(3)(C).  Plaintiff merely provides that this prong is satisfied because it will reduce the risk of inconsistent outcomes.  Plaintiff willfully ignores the difficulties in adjudicating a nation-wide class action predominated with individual questions of fact and law and requiring individualized investigations as to each theoretical member's claims and Midland's individual defenses.  Rather, Plaintiff merely concludes that there exists a risk of inconsistent outcomes.  What Plaintiff fails to do is provide any justification for "why it would be especially efficient for this Court to hear such a massive class action lawsuit". See  Zinser, 253 F. 3d at 1191-92.

Lastly, the fourth requirement of 23(b)(3) is not met.  To assess whether a class is manageable, the Supreme Court observed that the court must considered "the whole range of practical problems that may render the class action format inappropriate for a particular suit." Elsen v. Carlisle and Jacquelin, 417 U.S. 156, 164 (1974).  There are numerous practical problems in the present matter which make the nationwide class difficult to manage; specifically here "each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not the 'superior' method of adjudication." Zinser, at 1192.  Not only does the proposed class lack numerosity, typicality, commonality, and adequacy as to representation, it is a class where individual questions of law

41

and fact overwhelmingly predominate over proposed class claims. Midland contends that the pervasive difficulties in the management of this proposed class, as set forth above, render class treatment grossly inferior (arguably impossible) to individual treatment.

Therefore, Plaintiff's Amended Motion for Class Certification must be denied because class treatment is clearly not the superior method of adjudicating Plaintiff's claims.

**V.      CONCLUSION**

Defendant, Midland Funding LLC, respectfully request that this Court denies Plaintiff's Amended Motion for Class Certification and Appointment for Class Counsel and that this Court deem Plaintiff an inadequate class representative.

Respectfully submitted,

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

By:    /s/ Andrew M. Schwartz / ams121
       ANDREW M. SCHWARTZ
       1845 Walnut Street, 17th Floor
       Philadelphia, PA 19103
       (215) 575-2765
       (215) 575-0856 (f)
       amschwartz@mdwcg.com
       Attorney for Defendant
       Midland Funding LLC

Dated: April 15, 2011