```
                  IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAPHAEL CLAVELL                  :        CIVIL ACTION
                                 :
        v.                       :
                                 :
MIDLAND FUNDING LLC              :        NO. 10-3593
```

MEMORANDUM

Dalzell, J.                                              June 21, 2011

      Plaintiff Richard Clavell sued defendant Midland Funding LLC ("Midland") in this putative class action for allegedly forwarding Clavell's debt to a law firm in Pennsylvania to file an action in court against him, which the law firm did. As it turned out, the statute of limitations for that action had run. Clavell now moves for certification of a class of similarly situated debtors.

**I.**   **Background**

    **A.**   **The Fair Debt Collection Practices Act**

      A central purpose of the Fair Debt Collection Practices Act ("FDCPA") is to eliminate debt collectors' abusive practices. In relevant part, 15 U.S.C. § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" and lists as examples of prohibited conduct: false representation of "the character, amount, or legal status of any debt," a "threat to

take any action that cannot legally be taken or that is not intended to be taken," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(2), (5) and (10). Similarly, the FDCPA prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Such "unconscionable and unfair" conduct includes collecting any amount (e.g., interest, fees, and other charges) unless the amount is "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Courts view FDCPA claims "through the eyes of an 'unsophisticated debtor.'" McMillan v. Collection Professionals Inc., 455 F.3d 754, 758 (7th Cir. 2006) (citation omitted).

### B. Facts

On October 19, 2008, Midland forwarded Clavell's debt to the now-defunct dedicated collection law firm Mann Bracken to file a collection action in court against Clavell. Pl. Mot., Ex. A. Over nine months later, on July 24, 2009, Mann Bracken brought that suit in Philadelphia Municipal Court on behalf of

defendant Midland. Compl. ¶ 6.[1] That collection lawsuit alleged Midland to be the purchaser of a credit card debt Clavell owed with an alleged default date of "6/15/05." Id. ¶ 7. On August 20, 2009, Clavell, through his counsel, sent a letter to Midland demanding that it dismiss the action immediately because the four-year statute of limitations on the claim had expired. Id. ¶ 8. The next day Midland dismissed the action without prejudice. Id. ¶ 9. On October 3, 2009, Clavell petitioned the Municipal Court to dismiss the collection action with prejudice and vacate the prior disposition of the dismissal without prejudice. Id. ¶ 10. On November 20, 2009, the Municipal Court granted that petition and dismissed the action with prejudice. Id. ¶ 11.

Clavell avers upon information and belief that Midland regularly engages in the practice of suing on time-barred debt without reasonable inquiry into whether the statute of limitations for the given state in which they are bringing suit had been or should have been tolled. Id. ¶ 13. He alleges that on September 16, 2009, the State of Maryland Office of the Commissioner of Financial Regulation entered a cease and desist Order against Midland based on its collection activities violating various state and federal laws, including the FDCPA, by

---

[1] Plaintiff's complaint contains two paragraphs numbered "6." We refer here to the second paragraph "6."

its actions in seeking to collect time-barred debt through litigation. Id. ¶ 14.

Plaintiff avers that defendant files hundreds, if not thousands, of lawsuits on time-barred debt against consumers throughout the United States -- lawsuits that are virtually identical to the one that defendant filed against plaintiff. Id. ¶ 19. Plaintiff's complaint alleges that defendant has violated the FDCPA (Count I) and seeks to certify a class of

> All persons against whom Defendant sued since July 21, 2009, on time barred debt based on written instruments, such as credit card agreements, as calculated from the last payment due date available in Defendant's records.

Pl. Mot. at 1.

## II. Analysis[2]

### A. Legal Standard for Class Certification

The class action device is appropriate in cases where it "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." General

---

[2]Midland presents arguments that address the merits of the case. We will here only consider whether Clavell's proposed class should be certified, and will postpone consideration of these other arguments until such time as addressing them is warranted.

4

Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 155 (1982) (quoting Califano v. Yamasaki, 442 U.S. 682, 701 (1979)). Class actions exist "not to penalize defendants, but to facilitate the resolution of complex claims affecting potentially large numbers of similarly situated litigants." Donaldson v. Exelon Corp., 2006 WL 2668573, at *1 (E.D. Pa. Sept. 14, 2006).

The FDCPA expressly provides for class actions. See 15 U.S.C. § 1692k(a)(2)(B). In order to be certified as a representative of a class, Clavell must at the threshold show that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed R. Civ. P. 23(a). The shorthand for these four requirements is numerosity, commonality, typicality, and adequacy. In addition, the class action must be one of the types Rule 23(b) identifies. Rule 23(b)(3) permits class actions where the Court finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**B.  Identifiability of the Proposed Class**

There are two prerequisites that we must consider before addressing the requirements of Rule 23(a): (1) the class must be sufficiently defined so that the class is identifiable, and (2) the named representative must fall within the proposed class.  Oshana v. Coca-Cola Bottling Co., 225 F.R.D. 575, 580 (N.D. Ill. 2005).

While Rule 23 does not include a "definiteness" requirement, courts in this Circuit have recognized that "Rule 23 implicitly requires that prospective plaintiffs propose a class definition that is readily ascertainable based on objective criteria."  Agostino v. Quest Diagnostics, Inc., 256 F.R.D. 437, 478 (D.N.J. 2009).  This requirement is necessary because class actions bind all unnamed class members. Giordano v. Radio Corp. of America, 183 F.2d 558, 561 (3d Cir. 1950).  It is not fatal for a class definition to require some inquiry into individual records so long as the inquiry is not "so daunting as to make the class definition insufficient."  Sadler v. Midland Credit Mgmt., Inc., No. 06-5045, 2008 WL 2692274, at *3 (N.D. Ill. Jul. 3, 2008). If, however, the Court would need to conduct individualized inquiries into each potential class member's claim in order to define the class, the class definition is deficient. Id.  Put another way, Clavell's proposed class is identifiable

6

only if the information necessary to identify those class members is available through a "ministerial review" rather than "arduous individual inquiry."  Id.

Clavell argues that his proposed class definition is based exclusively on quantitative data points in Midland's own database.  Pl. Repl. at 2.  He thus argues that there will be no need to hold any "mini-trials, or [perform] any complex determination."  Id.  Clavell claims that Midland can run searches on its database to show each debt's last payment date and that from this the statute of limitations, and whether it has run can be readily determined.  Id.

Clavell also contends that courts have previously certified FDCPA classes based on time-barred debts.  Pl. Mot. at 11.  While this is true, in most of the cases Clavell cites the determining factor of class identifiability was either whether the debt collector had attached the contract to the complaint or whether the debt collector had sent a deceptive letter to the debtor.  None of the cases Clavell cites involved determining whether the class was identifiable based on some marker in the defendant's database of when the actual statute of limitations expired.

Midland argues that Clavell's proposed class may include debts which were not filed outside the statute of

7

limitations as the definition includes all time-barred debts "as calculated from the last payment due date available in Defendant's records." Def. Resp. at 18 (internal quotation marks omitted). Midland contends that its database only shows the <u>estimated</u> statute of limitations, not the actual statute of limitations (which depends on the state), and thus the database will not show the actual proposed class because the estimate ignores many factors involved in the calculus of the actual statute of limitations in particular cases. Id.

These factors include state laws which calculate the statute of limitations from the charged-off date, tolling statutes, payments made after the initial default, courts' interpretation of the state's statute of limitations and when the statute of limitations begins to accrue in a particular state. Id. at 18-19. Nayri Rita Melconian, Midland's Corporate Counsel for litigation, testified on this wide variation in her deposition:

> The state statute of limitations period for the consumer's residence may apply, or there could be governing law that applies to that particular state, that is defined in the cardholder agreement. The state could refer to a borrowing statute that would apply a different state statute of limitations period. And there are different statute of limitations periods that govern different types of accounts, whether they are oral accounts or written -- oral contracts, or

> written contracts, or auto deficiency loans,
> or telecom, and who knows how many others.
> There are different factors to consider that
> may toll the statute of limitations; whether
> the consumer was out of the state, absent
> from the state, whether there was a
> bankruptcy. It is very, very difficult to
> determine, on a group of accounts, what
> particular statute of limitations period
> would govern. There needs to be an account-
> level analysis, taking into consideration all
> of these factors.

Id., Ex. G at 41:12-42:5.

Clavell notes that Midland's records for his debt showed a last payment date of June 13, 2005, which under Pennsylvania law set the statute of limitation period to expire on June 13, 2009. Pl. Mot. at 5. Clavell claims that on August 20, 2009, his lawyer wrote to Midland explaining that the statute of limitations barred any collection action, violated the FDCPA, and required immediate dismissal of the action. Id. That same day, Midland's internal records show as to Clavell, "REVIEWED FILE SOL HAD PASSED." Id., Ex. A at 2. Clavell does not allege that all of Midland's files contain this information. Instead, he alleges that Midland's files list each debtor against whom an action was filed after the passage of the statute of limitations based on the last payment date. Pl. Repl. at 2. But that last payment date may not accurately reflect when the statute of

limitations ran as to each putative class member given all of the factors mentioned above.

Clavell cites <u>Sannemann v. Chrysler Corp.</u>, 191 F.R.D. 441, 446 (S.D. Ill. 2000), in support of his contention, but in that case the court found that "determining a membership in the class would essentially require a mini-hearing on the merits of each class member's case." <u>Id.</u>  The same is true here.  Whether Clavell is successful in this action depends on whether Midland has been filing lawsuits on time-barred debts.  Thus, whether the debt was time-barred is something that we would have to determine for each potential class member. "If the court is required to conduct individual inquiries to determine whether each potential class member falls within the class, the court should deny certification." <u>Ramirez v. Palisades Collection, LLC</u>, 250 F.R.D. 366, 369 (N.D. Ill. 2008).  In addition, "[w]here nothing in the company's databases 'shows or could show' whether individuals should be included in the proposed class, the class definition fails." <u>Sadler</u>, 2008 WL 2692274, at *5.

Based on the evidence that Clavell has presented, Midland's argument has force in that its records only reflect the <u>estimated</u> statute of limitations expiration date and that, while their records <u>could</u> show whether the statute of limitations had expired, this cannot be done without an independent evaluation of

10

each potential class member.  Thus, even if Midland could run a search that identified all of the debtors against whom cases had been filed after the estimated statute of limitations had run, this would not capture the proposed class, which includes only "persons against whom Defendant sued since July 21, 2009, on <u>time barred</u> debt based on written instruments . . . as calculated from the last payment due date available in Defendant's records."  Pl. Mot. at 1 (emphasis added).  But as calculating the statute of limitations based on the last payment due date may not -- indeed, likely will not -- definitely capture the actual statute of limitations expiration date, the Midland database will not avoid an individualized inquiry into each putative member's debt's particular circumstances.

Thus, although Clavell himself is a member of his proposed class, that class is not identifiable based on Midland's records alone.  In fact, those records show that an independent inquiry had to be conducted to determine whether Clavell's debt's statute of limitations had indeed run.  Because we find that the proposed class is not identifiable based on the evidence Clavell presents, we need not consider whether the class meets the requirements of Rule 23(a) and 23(b).  We decline to certify the proposed class and will deny Clavell's motion.

BY THE COURT:


\_\_\s\Stewart Dalzell